**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

LAWMEN SUPPLY COMPANY OF NEW
JERSEY, INC.,

        Plaintiff,

    v.

GLOCK, INC.,

        Defendant.

No. 1:17-cv-6166 (NLH/JS)

**OPINION**

---

**APPEARANCES**:

JONATHAN LOUIS TRIANTOS
SHAWN C. HUBER
WILLIAM M. TAMBUSSI
BROWN & CONNERY, LLP
360 HADDON AVENUE
WESTMONT, NJ 08108
    On behalf of Plaintiff

JOHN VINCENT TAIT
RENZULLI LAW FIRM, LLP
81 MAIN STREET, SUITE 508
WHITE PLAINS, NY 10601
    On behalf of Defendant

**HILLMAN**, District Judge

    This matter arises from a Distribution Agreement between Plaintiff Lawmen Supply Company of New Jersey, Inc. and Defendant Glock, Inc.  Before the Court is Defendant's Motion to Dismiss.  For the reasons that follow, the Court will grant in part and deny in part Defendant's motion.  The Court will grant Plaintiff leave to file an amended complaint.

The Court takes its facts from Plaintiff's Complaint. Plaintiff is a licensed distributor of law enforcement products from leading manufacturers to law enforcement agencies. Defendant makes pistols and related products. For over twenty-five years, Plaintiff and Defendant have been in business together. Approximately four years prior to the filing of the Complaint, Plaintiff became a "Glock Only" distributor.

At the time of the filing of the Complaint, Plaintiff held an exclusive state contract with the State of New Jersey for Glock weapons, and thus all law enforcement agencies within the state were required to purchase Glock pistols from Plaintiff. Plaintiff has had similar contracts with the State of Delaware and the State of Maryland.

On December 6, 2016, Plaintiff and Defendant entered into a Distribution Agreement for Plaintiff to distribute "Glock Only" pistols to the law enforcement market. This Distribution Agreement is an annual contract that has been renewed every year since 2011. On July 10, 2017, Defendant attempted to unilaterally terminate the Distribution Agreement "effective immediately." Defendant claimed Plaintiff violated the

Distribution Agreement by selling 340 Glock products to the commercial market rather than the law enforcement market.[1]

Plaintiff's Complaint brings the following claims: (1) violation of the New Jersey Franchise Practices Act (NJFPA) (unlawful termination); (2) violation of the NJFPA (engagement in prohibited practices); (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) promissory and equitable estoppel; (6) tortious interference with business relations; (7) tortious interference with contract; (8) breach of fiduciary duty; (9) fraud and negligent misrepresentation; (10) unjust enrichment, (11) violation of the New Jersey Uniform Commercial Code; and (12) violation of the New Jersey Consumer Fraud Act (NJCFA). Defendant filed its Motion to Dismiss on October 4, 2017.

**II.**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiff is a New Jersey corporation with its principal place of business in Delaware. Defendant is a Georgia corporation with its principal place of business in Georgia. As Defendant's Notice of Removal pleads an

---

[1]   On January 31, 2018, the Court signed a Consent Order submitted by the parties to resolve Plaintiff's request for preliminary injunctive relief in this matter. This Consent Order, entered into "to eliminate any potential inconvenience to [Lawmen's] law enforcement agency customers," governs the current relationship between the parties.

amount in controversy in excess of $75,000, exclusive of interest and costs, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## III.

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

4

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

**IV.**

The Court first addresses what law it applies in deciding this motion. "A federal district court applies the forum state's choice of law rules to diversity actions." <u>Ciecka v. Rosen</u>, 908 F. Supp. 2d 545, 552 (D.N.J. 2012). Accordingly, the Court will apply New Jersey choice of law rules. "New Jersey choice-of-law rules provide that '[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.'" <u>Collins v. Mary Kay, Inc.</u>, 874 F.3d 176, 183-84 (3d Cir. 2017) (quoting <u>Instructional Sys., Inc. v. Comput. Curriculum Corp.</u>, 614 A.2d 124, 133 (N.J. 1992)).

> Parties' freedom to choose the law applicable to their agreements is not without boundaries in New Jersey law. New Jersey looks to Restatement § 187 to determine under what circumstances a choice-of-law clause will <u>not</u> be respected. Specifically, the Restatement provides that the parties' contractual choice will not govern if: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties."

<u>Id.</u> at 184 (quoting <u>Instructional Sys.</u>, 614 A.2d at 133).

The Distribution Agreement provides: "This Agreement and the rights and obligations of the parties hereunder shall be governed and construed in accordance with the internal,

6

substantive laws of the State of Georgia, USA, including its provisions of the Uniform Commercial Code, but without giving effect to its conflicts of laws principles."

The parties do not dispute that, if their relationship constitutes a franchise, the NJFPA applies regardless of the Georgia choice of law provision.  See, e.g., Colt Indus. v. Fidelco Pump & Compressor Corp., 700 F. Supp. 1330, 1333 (D.N.J. 1987) ("[I]f this Court finds that the relationship between the parties amounts to a franchise as that term is used in the [NJFPA], the choice of law provision contained in the agreements will not abrogate the right of the [parties] to invoke the protections of [the NJFPA].").  The same holds true for Plaintiff's other state statutory claim.  Prescription Counter v. AmerisourceBergen Corp., No. 04-5802, 2007 WL 3511301, at *13 (D.N.J. Nov. 14, 2007) ("The importance of the consumer protection policy manifested by the NJCFA has led the courts to apply New Jersey law, even though other choice of law rules pointed elsewhere.").

However, the parties disagree as to what law applies to the state common law claims.  Plaintiff argues New Jersey law applies; Defendant argues Georgia law applies.  The Court finds that, regardless of whether the NJFPA applies, it must apply Georgia law to the state common law claims.  Ocean City Express Co. v. Atlas Van Lines, Inc., No. 13-1467, 2013 WL 3873235, at

*4 n.4 (D.N.J. July 25, 2013) ("It may seem incongruous to apply New Jersey law and Indiana law in the same action, with New Jersey law governing the NJFPA claim and Indiana law governing the good faith and fair dealing claim. But other courts in this district have applied two states' laws to cases involving NJFPA claims."); Goldwell of N.J., Inc. v. KPSS, Inc., 622 F. Supp. 2d 168, 193-94 (D.N.J. 2009) ("[T]he Court will respect the . . . choice of law provisions stipulating that Maryland law shall govern [the] non-NJFPA claims."); Stadium Chrysler Jeep, L.L.C. v. DaimlerChrysler Motors Co., LLC, 324 F. Supp. 2d 587, 594 n.1 (D.N.J. 2004); Harter Equip., Inc. v. Volvo Constr. Equip. N. Am., Inc., No. 01-4040, 2003 WL 25889139, at *8 (D.N.J. Sept. 24, 2003).

Plaintiff cites Red Roof Franchising, LLC v. Patel, 877 F. Supp. 2d 124 (D.N.J. 2012), aff'd, 564 F. App'x 685 (3d Cir. 2014); King v. GNC Franchising, Inc., No. 04-5125, 2007 WL 1521253 (D.N.J. May 23, 2007); Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 506 A.2d 817 (N.J. Super. Ct. App. Div. 1986); and Instructional Systems, 614 A.2d 124 in arguing New Jersey law applies. None of these cases convince the Court that New Jersey law should apply to the state law claims.

Red Roof Franchising, decided by the undersigned in 2012, was a case dealing with the NJFPA and a Texas choice of law provision. The Court determined that, "[s]ince the franchise

[wa]s located in New Jersey, it benefit[ed] from the protections
of the New Jersey Franchise Practices Act."  877 F. Supp. 2d at
130.  The Court then considered whether the Texas choice of law
provision should govern the common law issues – a separate
inquiry.  Id. at 131.  At issue was a breach of contract claim.
Id.  The Court determined that there was "no true conflict
between Texas law and New Jersey law with regard to breach of
contract," and the Court thus decided to apply New Jersey law,
i.e., the law of the forum state, due to the absence of a
conflict.  The Red Roof Franchising court thus did not decide
this issue.

    The Court need not dwell long on Instructional Systems,
Winer Motors, or King, which have already been examined as to
this issue by the Goldwell court:

> In ISI I, . . . the Court was asked to decide whether
> the application of the NJFPA applied despite the
> existence of a California choice of law provision (the
> New Jersey Supreme Court answered affirmatively).  ISI
> I, 130 N.J. at 341.  It did not answer the different
> question of whether an extra-state choice of law
> provision may apply to non-NJFPA (i.e., common law)
> claims asserted elsewhere in the litigation.  Nor did
> Winer Motors . . . – relied upon by the courts in both
> ISI I and King – where the issue presented was whether
> the NJFPA or a Connecticut analogue applied to a
> Connecticut franchisee notwithstanding a New Jersey
> forum selection clause . . . .  Again, the sole inquiry
> was which state's franchise protection statute applied,
> not whether a choice of law provision otherwise governed
> existing common law claims.
>     This Court recognizes that the court in King
> applied New Jersey law to breach of contract
> counterclaims brought by a defendant franchisor against

> New Jersey franchisees despite a Pennsylvania forum
> selection clause . . . . However, insofar as <u>King</u> relies
> on <u>ISI I</u> and <u>Winer</u> for the proposition that, despite an
> alternative forum selection clause, "New Jersey choice
> of law jurisprudence clearly holds that the law of the
> state in which the franchise has its principal place of
> business should apply" inexorably in all respects to all
> causes of action, this Court must politely part company
> with that decision.

<u>Goldwell</u>, 622 F. Supp. 2d at 194 (citations omitted). The Court

agrees with the <u>Goldwell</u> court's interpretation of <u>Instructional</u>

<u>Systems</u>, <u>Winer Motors</u>, and <u>King</u>. The Court will apply Georgia

law to the non-NJFPA and non-NJCFA claims.

V.

**A. New Jersey Franchise Practices Act**

Plaintiff argues two violations of the NJFPA: unlawful

termination under N.J.S.A. 56:10-5 and engagement in prohibited

practices under N.J.S.A. 56:10-7(f). Before reaching the merits

of these claims, the Court must first determine whether

Plaintiff is entitled to the protections of the NJFPA. "The New

Jersey legislature enacted the NJFPA to remedy the disparity in

bargaining power between franchisors and franchisees by

protecting franchisees against indiscriminate terminations and

nonrenewals." <u>Red Roof Franchising</u>, 877 F. Supp. 2d at 137.

"The protections of the NJFPA . . . apply only to a

'franchise,'" as defined by the statute. <u>Ocean City Express Co.</u>

<u>v. Atlas Van Lines, Inc.</u>, 194 F. Supp. 3d 314, 322 (D.N.J.

2016). N.J.S.A. 56:10-3 defines a "franchise" as follows:

a written arrangement for a definite or indefinite
period, in which a person grants to another person a
license to use a trade name, trade mark, service mark,
or related characteristics, and in which there is a
community of interest in the marketing of goods or
services at wholesale, retail, by lease, agreement, or
otherwise.

"In other words, a franchise under the NJFPA requires the

franchisor's grant of a license to the franchisee and a

community of interest between the parties in the relevant

market." Id. Further, the NJFPA applies only

to a franchise (1) the performance of which contemplates
or requires the franchisee to establish or maintain a
place of business within the State of New Jersey, (2)
where gross sales of products or services between the
franchisor and franchisee covered by such franchise
shall have exceeded $35,000.00 for the 12 months next
preceding the institution of suit pursuant to this act,
and (3) where more than 20% of the franchisee's gross
sales are intended to be or are derived from such
franchise.

N.J.S.A. 56:10-4(a).

In sum, "[a] franchise exists under the NJFPA if: (1) there

is a 'community of interest' between the franchisor and the

franchisee; (2) the franchisor granted a 'license' to the

franchisee; and (3) the parties contemplated that the franchisee

would maintain a 'place of business' in New Jersey." Cooper

Distrib. Co. v. Amana Refrigeration, 63 F.3d 262, 268-69 (3d

Cir. 1995) (citing N.J.S.A. 56:10-3a, -4a).[2] Determining whether

---

[2]    Plaintiff's Complaint sufficiently pleads gross sales in
excess of $35,000 and that over twenty percent of Plaintiff's

11

a franchise exists requires not only examination of the agreement between the parties "but also the parties' practices under it." <u>Cassidy Podell Lynch, Inc. v. Snydergeneral Corp.</u>, 944 F.2d 1131, 1138 (3d Cir. 1991). The Court begins with the New Jersey place of business requirement.

**1. Place of Business in New Jersey**

The NJFPA requires that, for a franchise to exist, the performance must "contemplate[] or require[] the franchisee to establish or maintain a place of business within the State of New Jersey." N.J.S.A. 56:10-4(a)(1). "Place of business" is defined in N.J.S.A. 56:10-3(f) as follows:

> [A] fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods or offers for sale and sells the franchisor's services. Place of business shall not mean an office, a warehouse, a place of storage, a residence or a vehicle, except that with respect to persons who do not make a majority of their sales directly to consumers, "place of business" means a fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods or offers for sale and sells the franchisor's services, or an office or a warehouse from which franchisee personnel visit or call upon customers or from which the franchisor's goods are delivered to customers.

"In other words, the NJFPA requires an actual sales location in New Jersey at which a 'substantial level' of customer marketing and 'sales-related [customer] interplay' occurs, not solely a

---

gross sales are derived from the purported franchise. Defendant does not contest this.

center of distribution." <u>Ocean City Express</u>, 46 F. Supp. 3d at

509 (alteration in original) (quoting <u>Fischer Thompson</u>

<u>Beverages, Inc. v. Energy Brands Inc.</u>, No. 07-4585, 2007 WL

3349746, at *3 (D.N.J. Nov. 9, 2007)). "In order to survive

dismissal, Plaintiff must therefore allege that selling

constitutes a 'major activity' on its premises, 'involving the

interplay of goods on display, the physical presence of the

customer[,]' in addition to actual efforts to sell product(s) to

the customer." <u>Id.</u> (alteration in original) (quoting <u>Liberty</u>

<u>Sales Assocs., Inc. v. Dow Corning Corp.</u>, 816 F. Supp. 1004,

1009 (D.N.J. 1993)).

The Court finds Plaintiff has failed to plead in the

current complaint that selling constitutes a major activity at

the New Jersey place of business. In Plaintiff's opposition

brief, it argues:

> Here, Lawmen's New Jersey facility is the hub of its
> marketing and sales-related activities as it relates to
> Glock products sold to the New Jersey law enforcement
> market, which is the largest and most profitable law
> enforcement market for Lawmen under the Distribution
> Agreement. (Complaint ¶ 1, 92.) Indeed, at Lawmen's
> New Jersey facility – which also serves as its principal
> place of business – Lawmen employs its sales and support
> personnel who display, order, and manage all
> transactions for Glock products for New Jersey law
> enforcement agencies under the Distribution Agreement.
> (<u>Id.</u>) As such, Lawmen's New Jersey facility is the exact
> type of facility this Court has found to satisfy the
> "place of business" inquiry.
> Second, while Lawmen does not maintain its FFL and,
> in turn, its Glock pistol inventory at its New Jersey
> facility, other non-pistol Glock products are kept,

offered, and sold from the New Jersey facility to New Jersey law enforcement agencies under the Distribution Agreement.  (<u>Id.</u>)

The problem with this argument is that those facts are not pleaded in the Complaint.  Plaintiff relies on paragraphs one and ninety-two of its Complaint in the argument quoted above.  These paragraphs simply plead that "Lawmen is a New Jersey corporation and New Jersey licensed distributor of law enforcement products" and that "Lawmen operates its franchise 'within the State of New Jersey.'"  (Compl. ¶¶ 1, 92).  In an uncited portion of the Complaint, it relatedly pleads: "Plaintiff Lawmen is a New Jersey corporation with its principal place of business at 7150 Airport Highway, Pennsauken, New Jersey 08109.  From this facility, Lawmen orders and manages the pistols it distributes to its customers."  (Compl. ¶ 9).

On a motion to dismiss, the Court assumes only the veracity of those facts actually pleaded.  However, because the facts recited in the brief, if pleaded in good faith, would be sufficient to make out a plausible claim that the New Jersey location is the type of sales facility required by the NJFPA and not merely a distribution site, Plaintiff will be granted leave to replead this aspect of the Complaint.  Plaintiff will be granted thirty days to amend its Complaint to assert those facts necessary to make out a plausible claim that it maintained an actual sales location in New Jersey at the time the alleged

14

franchise was terminated.[3]  The Court finds granting leave to
amend here comports with Federal Rule of Civil Procedure 15(b),
whereby a "court should freely give leave when justice so
requires."

While the Court assumes that, despite the lack of support
in Plaintiff's Complaint, Plaintiff has not been disingenuous in
its representations to the Court through its briefing, in
repleading, Plaintiff is reminded of the requirements of Federal
Rule of Civil Procedure 11 – that by filing a pleading with the
Court, an attorney is certifying that "the factual contentions
have evidentiary support or, if specifically so identified, will
likely have evidentiary support after a reasonable opportunity
for further investigation or discovery."

---

[3]    The parties also dispute whether the Distribution Agreement
contemplates or requires a place of business in New Jersey, as
it must for the NJFPA to apply.  Section 24 of the Distribution
Agreement states: "The DISTRIBUTOR's limited non-exclusive
territory will consist of the following area(s): NJ DE PA MD DC
NY."  It states Plaintiff can only sell to the law enforcement
market within these territories.  The Court notes that the NJFPA
does not requires a (or the) principal place of business to be
in New Jersey, but rather only that the Distribution Agreement
"contemplates" the establishment or maintenance of "a place of
business" in New Jersey.  N.J.S.A. 56:10-4(a)(1).  This term of
the Distribution Agreement, the allegations of a prolonged
course of dealing, and the facts alleged which the Court finds
constitute a plausible claim of a community of interest are
sufficient to make a claim that the parties "contemplated" a
place of business in New Jersey.

**2. Community of Interest Requirement**

The Court finds Plaintiff has set forth a plausible claim
that the parties share a community of interest such that the
NJFPA applies. "[A] community of interest exists when the terms
of the agreement between the parties or the nature of the
franchise business requires the licensee, in the interest of the
licensed business's success, to make a substantial investment in
goods or skills that will be of minimal utility outside the
franchise." Cassidy Podell Lynch, 944 F.2d at 1143. Thus, "in
order to find a 'community of interest,' two requirements must
be met: (1) the distributor's investments must have been
'substantially franchise-specific,' and (2) the distributor must
have been required to make these investments by the parties'
agreement or the nature of the business." Cooper Distrib. Co.,
63 F.3d at 269 (citation omitted) (first citing Instructional
Sys., 614 A.2d at 141; and then citing N.J.S.A. 56:10-3a).
"Franchise-specific investments are usually tangible capital
investments, such as a building designed to meet the style of
the franchise, special equipment useful only to produce the
franchise product, and franchise signs." Beilowitz v. GMC, 233
F. Supp. 2d 631, 640 (D.N.J. 2002) (citing Instructional Sys.,
614 A.2d at 141). Further, "[a] community of interest may be
demonstrated by the economic dependence of the alleged
franchisee on the alleged franchisor, as evidenced by a high

16

percentage of the franchisee's sales of the franchisor's products." Id. at 641.

Plaintiff highlights the following provisions in the Distribution Agreement to show a community of interest:

- "DISTRIBUTOR agrees to purchase a minimum of Three Hundred and Seventy-Five Thousand in U.S. Dollars ($375,000 USD) of product per year from GLOCK." (Section 7).

- "DISTRIBUTOR understands that as a GLOCK Only DISTRIBUTOR, when doing business with law enforcement agencies, DISTRIBUTOR will offer and sell only GLOCK products." (Section 1).

- "DISTRIBUTOR agrees not to sell or knowingly transact business that will result in the sale, transfer and/or exchange of GLOCK products outside the Law Enforcement market (i.e. to the commercial market) . . . ." (Section 8).

- "DISTRIBUTOR agrees to use best sales efforts to market GLOCK products." (Section 7).

- "DISTRIBUTOR shall maintain at least one certified GLOCK Armorer on staff at each location subject to this Agreement." (Section 25).

The Court finds sufficient evidence of a community of interest to withstand the Motion to Dismiss. In Instructional Systems, the New Jersey Supreme Court found the following supported a finding of a community of interest: the prohibition of developing products that would compete with franchisor's products, the required maintenance of sales representatives, the joint representation at conventions, the prohibition from selling competitive products, the requirement to use "best

efforts" to sell franchisor's products, franchise-specific investments, the goodwill and contacts that came from twenty years of persuading customers to choose the franchisor product, and that ninety-seven percent of revenue came from the sale of the franchisor's products. Instructional Sys., 614 A.2d at 145-46.

The Court notes that the Complaint pleads that "[f]or 2016, Lawmen sales that were made pursuant to the Distribution Agreement constituted 21.5% of Lawmen's overall business." This is unlike the ninety-seven percent of revenue in Instructional Systems. Despite this difference, however, the Court finds at the motion to dismiss stage it must find Plaintiff is permitted to present the Court with evidence of a community of interest. Plaintiff pleads it has a longstanding association with Defendant of over twenty-five years and has been a "Glock Only" pistol distributor for at least four years. Plaintiff has discontinued its relationships with other manufacturers because of its relationship with Defendant. The Distribution Agreement requires the maintenance of at least one Glock Armorer at each location subject to the Distribution Agreement. It further requires Plaintiff "to use best sales efforts to market GLOCK products."[4] Plaintiff has displayed Glock products and

---

[4]     The Court finds it appropriate to consider the Distribution Agreement in deciding this Motion to Dismiss.  "In deciding

promotional materials at least at one trade show with

Defendant's support and approval.  Taking these facts together,

the Court finds Plaintiff has pleaded enough facts make out a

plausible claim that the parties share a community of interest.

### 3. License Requirement

"The New Jersey Supreme Court has declared that 'not every

grant of permission to use a trademark in the sale of goods or

services is a "license" within the meaning of the Franchise

Act.'"  McPeak v. S-L Distrib. Co., No. 12-348, 2014 WL 320074,

at *5 (D.N.J. Jan. 29, 2014) (quoting Instructional Sys., 614

A.2d at 138).  Rather, "the 'hallmark of the franchise

relationship is the use of another's trade name in such a manner

as to create a reasonable belief on the part of the consuming

public that there is a connection between the trade name

licensor and licensee by which the licensor vouches, as it were,

for the activity of the licensee in respect of the subject of

the trade name.'"  Id. (quoting Neptune T.V. & Appliance Serv.,

Inc. v. Litton Sys., Inc., 462 A.2d 595, 599 (N.J. Super. Ct.

App. Div. 1983)).  "[T]he license contemplated by the Act is one

in which the franchisee wraps himself with the trade name of the

---

motions to dismiss pursuant to Federal Rule of Civil Procedure
12(b)(6), courts generally consider only the allegations in the
complaint, exhibits attached to the complaint, matters of public
record, and documents that form the basis of a claim."  Lum v.
Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).

franchisor and relies on the franchisor's goodwill to induce the
public to buy." Id. (quoting Liberty Sales Assocs., 816 F.
Supp. at 1010). "When interpreting the NJFPA, a court must
therefore consider not only the parties' written agreement, but
also their relationship, in order to determine whether a license
exists." Id.

"What distinguishes a franchise from an ordinary
distributorship is that the goodwill inherent in the name and
mark attaches to the entire business of the seller, not just to
the goods themselves." Liberty Sales Assocs., 816 F. Supp. at
1010.

> A manufacturer of branded goods will certainly not
> object, and may encourage, a distributor to use its name
> or mark to encourage sales. This kind of use does not
> turn a distributor or seller of goods into a licensee
> for purposes [of] the Act. Rather, it is the obligation
> of the franchisee to promote the mark itself, as distinct
> from merely using it to make sales, which distinguishes
> a license meeting the Act's requirements from the right
> to use a mark that any reseller of goods gets when
> purchasing those goods from the owner of the mark.

Id. at 1011.

Plaintiff argues the following allegations in its Complaint
support a finding of a license:

- Plaintiff "has a written agreement with Glock, the
  franchisor, that granted Lawmen a license to market,
  promote, demonstrate, and sell Glock products."
  (Compl. ¶ 91).

- "The Distribution Agreement requires Lawmen as a
  condition precedent to the contract to make an initial
  purchase of $2,500 in magazines and $500 in parts. It

also requires as a condition that Lawmen purchase a minimum of $375,000 of products from Glock in each year of the contract. Lawmen has at all times met the annual minimum purchase requirements set forth in the Distribution Agreement." (Compl. ¶ 18 (citations omitted)).

- "Under the Distribution Agreement, Glock is obligated to sell its products to Lawmen." (Compl. ¶ 19).

- "Glock specifically directs how Lawmen markets Glock products in the Distribution Agreement . . . ." (Compl. ¶ 20).

- "The Distribution Agreement . . . sets forth the manner in which Lawmen may sell Glock products . . . ." (Compl. ¶ 21).

- "The Distribution Agreement . . . dictates how Lawmen may conduct marketing and sales on the internet for the sale of Glock products . . . ." (Compl. ¶ 22).

- "The Distribution Agreement . . . requires Lawmen to meet certain personnel requirements related to Glock sales . . . ." (Compl. ¶ 23).

- "Glock controls the sales and marketing functions of Lawmen by requiring Lawmen personnel to adhere to 'Rules of Conduct' in the sale of its goods." (Compl. ¶ 24).

- "On June 27 and 28, 2017, Lawmen maintained a display at the New Jersey Police and Security Expo. This is one of the region's largest trade shows. Lawmen was the largest supplier at this trade show. . . . With the knowledge, approval, and support of Glock, Lawmen displayed Glock products and promotional materials at the New Jersey Police and Security Expo. On information and belief, there were approximately twelve thousand (12,000) attendees at this trade show." (Compl. ¶¶ 59-60).

- "Glock specifically authorized Lawmen's ability to bid for the New Jersey Contract. Glock dictated to Lawmen the price that Glock products must be listed

21

at in Lawmen's bid for the New Jersey Contract." (Compl. ¶ 35).

- "Glock specifically authorized Lawmen to bid for the Delaware Contract. Moreover, Glock dictated to Lawmen the price that Lawmen must list Glock products at in its bid for the Delaware contract." (Compl. ¶ 41).

Plaintiff also argues "Lawmen's longstanding presence in the law enforcement community and association with Glock (over 25 years) – including the participation alongside Glock in countless trade shows, conventions, demonstrations, and other public functions – point to the deep-rooted and intertwined connection in the public mind between Glock and Lawmen."

However, Defendant directs the Court's attention to the following sections in the Distribution Agreement:

- "The relationship of GLOCK to DISTRIBUTOR is that of an independent contractor. DISTRIBUTOR will not represent itself as a GLOCK entity in any agreement either written or oral." (Section 11).

- "DISTRIBUTOR and GLOCK agree that DISTRIBUTOR may use the official GLOCK logo in its advertising for GLOCK products. DISTRIBUTOR agrees to contact GLOCK to obtain the appropriate logo and use instructions. This is a limited license and is only granted for the term of this Agreement." (Section 15.C).

- "DISTRIBUTOR agrees to place the official GLOCK disclaimer on the portion of its website which sells GLOCK merchandise, or if not feasible, on a Terms and Conditions page. The disclaimer is as follows: DISCLAIMER: 'GLOCK' is a federally registered trademark of GLOCK, Inc. and is one of many trademarks owned by GLOCK, Inc. or GLOCK Ges.m.b.H. Neither [insert company name here] nor this site are affiliated in any manner with, or otherwise endorsed by, GLOCK, Inc. or GLOCK Ges.m.b.H. The use of 'GLOCK' on this page is merely to advertise the sale

of GLOCK pistols, parts, or components. For genuine GLOCK, Inc. and GLOCK Ges.m.b.H products and parts visit www.glock.com." (Section 15.F).

- "DISTRIBUTOR agrees to refrain from using GLOCK's intellectual property for domain names, names of companies or social media pages." (Section 15.G).

Having considered the allegations in Plaintiff's Complaint in the light most favorable to Plaintiff, as well as the provisions of the Distribution Agreement, the Court finds on the whole that Plaintiff has made a plausible claim of a license as defined by the NJFPA, largely for the same reasons the Court finds sufficient facts pleaded to make out a plausible claim of a community of interest.

The Distribution Agreement clearly "grant[s] Lawmen a license to market, promote, demonstrate, and sell Glock products." Plaintiff's status as a "Glock Only" distributor further shows a connection to the public between Plaintiff and Defendant, as does the longstanding relationship between the parties. The Court reiterates its standard at the motion to dismiss stage: "[A] district court weighing a motion to dismiss, asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)). The Court finds Plaintiff has made a sufficient allegation of a license at this stage of the litigation.

## 4. Violations of the NJFPA

The Court easily finds that, if Plaintiff is able to
sufficiently plead a franchise relationship, Plaintiff has
sufficiently pleaded violations of the NJFPA.  N.J.S.A. 56:10-5,
governing unlawful termination, states in pertinent part:

> It shall be a violation of this act for any franchisor
> directly or indirectly through any officer, agent, or
> employee to terminate, cancel, or fail to renew a
> franchise without having first given written notice
> setting forth all the reasons for such termination,
> cancellation, or intent not to renew to the franchisee
> at least 60 days in advance of such termination,
> cancellation, or failure to renew . . . .

Plaintiff pleads that on July 10, 2017, Glock purported to
unilaterally terminated the Distribution Agreement effective
immediately.  Plaintiff has clearly sufficiently pleaded a
violation of N.J.S.A. 56:10-5.

N.J.S.A. 56:10-7(f) states:

> It shall be a violation of this act for any franchisor,
> directly or indirectly, through any officer, agent or
> employee, to engage in any of the following practices:
> . . . [t]o provide any term or condition in any lease or
> other agreement ancillary or collateral to a franchise,
> which term or condition directly or indirectly violates
> this act.

The "Termination" provision of the Distribution Agreement
violates N.J.S.A. 56:10-7(f).  Subsection A provides that "[a]ny
party may terminate this Agreement with thirty (30) days written
notice."  Subsection B provides that "GLOCK may terminate this
Agreement at any time due to DISTRIBUTOR's breach of any of the

covenants and conditions or any of its obligations under this contract.  Termination will be effective immediately upon delivery of written notice to such effect by certified mail." Subsection (C) provides: "If DISTRIBUTOR . . . fails to cure any material breach of this Agreement (including failure to make a payment when due) within thirty (30) days after written notice, GLOCK may suspend performance or terminate this Agreement and exercise any other legal rights or remedies."  All three of the termination provisions provide less than sixty days advance notice.

The Court will dismiss Plaintiff's NJFPA claims for failure to plead the New Jersey place of business requirement but will allow Plaintiff an opportunity to replead.  The Court otherwise finds Plaintiff's NJFPA claims sufficiently pleaded.

**B. Breach of Contract**

Plaintiff argues Defendant "materially breached the Distribution Agreement by purporting to terminate it 'immediately' based on an unauthorized sale, and without allowing Lawmen to reasonably cure any such breach."  "In Georgia, the elements of a breach of contract claim are: '(1) breach and (2) resultant damages (3) to the party who has the right to complain about the contract being broken.'"  <u>Jenkins v. BAC Home Loan Servicing, LP</u>, 822 F. Supp. 2d 1369, 1379 (M.D.

Ga. 2011) (quoting <u>Norton v. Budget Rent A Car Sys., Inc.</u>, 705

S.E.2d 305, 306 (Ga. Ct. App. 2010)).

Plaintiff's breach of contract claim focuses on Section 19

of the Distribution Agreement, entitled "Termination."  It

states, in full:

> A.    Any party may terminate this Agreement with thirty
>       (30) days written notice.  A certified letter to
>       this effect will suffice as notice of either
>       party's intent to terminate this Agreement.
>
> B.    GLOCK may terminate this Agreement at any time due
>       to DISTRIBUTOR's breach of any of the covenants and
>       conditions or any of its obligations under this
>       contract.    Termination will be effective
>       immediately upon delivery of written notice to such
>       effect by certified mail.
>
> C.    If DISTRIBUTOR becomes bankrupt or has a receiver
>       appointed for a substantial part of its assets, or
>       fails to cure any material breach of this Agreement
>       (including failure to make a payment when due)
>       within thirty (30) days after written notice, GLOCK
>       may suspend performance or terminate this Agreement
>       and exercise any other legal rights or remedies.

Plaintiff argues: "Part B, which appears to provide Glock with

the right to terminate the Distribution Agreement at any time

for a breach by Lawmen, directly conflicts with Part C, which

appears to give Glock the right to terminate the Distribution

Agreement only after thirty (30) days written notice of a breach

by Lawmen and an opportunity for Lawmen to cure that breach."

Defendant argues Plaintiff's interpretation "violates Georgia's

rules of contract interpretation and renders Section 19.B.

meaningless." (footnote omitted).  Defendant interprets the

provision as follows:

> The terms of the Distributor Agreement are clear and
> unambiguous.  Glock could: (1) terminate the Distributor
> Agreement for any (or no) reason with thirty days'
> notice; (2) terminate the Distributor Agreement
> immediately based on Lawmen's "breach of any of the
> covenants and conditions or any of its obligations"; or
> (3) provide Lawmen with written notice of a material
> breach and terminate the Distributor Agreement if Lawmen
> failed to cure such material breach within thirty (30)
> days after written notice.

Under Georgia law,

> [t]he construction of contracts involves three steps.
> At least initially, construction is a matter of law for
> the court.  First, the trial court must decide whether
> the language is clear and unambiguous.  If it is, the
> court simply enforces the contract according to its
> clear terms; the contract alone is looked to for its
> meaning.  Next, if the contract is ambiguous in some
> respect, the court must apply the rules of contract
> construction to resolve the ambiguity.  Finally, if the
> ambiguity remains after applying the rules of
> construction, the issue of what the ambiguous language
> means and what the parties intended must be resolved by
> a jury.

Stonegate Bank v. TD Bank, N.A., 596 F. App'x 834, 838 (11th

Cir. 2015) (alteration in original) (quoting City of Baldwin v.

Woodard & Curran, Inc., 743 S.E.2d 381, 389 (Ga. 2013)).

The Court finds this contract language ambiguous, and

certainly lacking in clarity.  Subsection (B) and subsection (C)

appear to contradict each other.  Subsection (C) appears to

assume written notice; subsection (B) assumes no such notice is

required.  The Court must view the contract language in the

light most favorable to Plaintiff.  Accordingly, the Court will

allow Plaintiff's breach of contract claim to proceed.[5]

## C. Good Faith and Fair Dealing

"In Georgia, '[e]very contract implies a covenant of good

faith and fair dealing in the contract's performance and

enforcement.'"  Ahmed v. Air France-KLM, 165 F. Supp. 3d 1302,

1313-14 (N.D. Ga. 2016) (alteration in original) (quoting Myung

Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic

Churches & Ministries, Inc., 662 S.E.2d 745, 748 (Ga. Ct. App.

2008)).  "There is no independent cause of action for breach of

the covenant of good faith and fair dealing under Georgia law."

Id. at 1314 (citing Enters. Int'l, Inc. v. Peykan, Inc., 555

S.E.2d 881, 883-84 (Ga. Ct. App. 2001)).  "The implied covenant

cannot be breached independently of 'the contract provisions it

modifies.'"  Id. (quoting Myung Sung, 662 S.E.2d at 748).

"Thus, to state a claim for breach of the implied duty of good

faith and fair dealing, 'a plaintiff must set forth facts

showing a breach of an actual term of an agreement.'"  Id.

---

[5]     Defendant further argues Plaintiff does not explain how it
could cure a material breach.  However, the Complaint pleads
that "Glock has been unwilling to accept any of the reasonable
cures proposed by Lawmen, nor has Glock proposed any cures that
would be acceptable to it."  Plaintiff pleads that Lawmen
President Thomas Hubregsen "offered to provide financial
restitution to any third-party dealer who was harmed by any
breach of the Distribution Agreement and to provide financial
restitution to Glock for any harm caused by any breach of the
Distribution Agreement."

(quoting Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C., 426
F. Supp. 2d 1356, 1370 (N.D. Ga. 2006)). "The duty of Good
Faith and Fair Dealing requires that you examine the acts taken
with discretion to determine whether they were arbitrary or
egregious." Ahmed, 165 F. Supp. 3d at 1314 (quoting Am. Mgmt.
Servs., LLC v. Fort Benning Family Cmtys., LLC, 774 S.E.2d 233,
246 (Ga. Ct. App. 2016)).

For the same reasons the Court will allow the breach of
contract claim to proceed, the Court will not dismiss
Plaintiff's claim for breach of the implied covenant of good
faith and fair dealing. Plaintiff pleads that Defendant's
reason for terminating the Distribution Agreement is pretextual:
"Glock's attempt to terminate the Distribution Agreement is due
to its dissatisfaction with the bargain it struck under the
Distribution Agreement." It is Plaintiff's contention that
Defendant was dissatisfied with Plaintiff's sales figures, which
was the reason behind the termination. The Court will not
dismiss Plaintiff's claim for breach of the implied covenant of
good faith and fair dealing.

## D. Promissory Estoppel

In Georgia, the elements of promissory estoppel are as
follows: "(1) the defendant made a promise or promises;
(2) the defendant should have reasonably expected the
plaintiffs to rely on such promise; (3) the plaintiffs
relied on such promise to their detriment; and (4) an
injustice can only be avoided by the enforcement of the
promise, because as a result of the reliance, plaintiffs

changed their position to their detriment by
surrendering, forgoing, or rendering a valuable right."

Joseph M. Still Burn Ctrs., Inc. v. AmFed Nat'l Ins. Co., 702 F.

Supp. 2d 1371, 1381 (S.D. Ga. 2010) (quoting Mariner Healthcare,

Inc. v. Foster, 634 S.E.2d 162, 168 (Ga. Ct. App. 2006)). "An

essential element of a claim of promissory estoppel is that the

defendant made certain promises to the plaintiff. And, while

the promise need not meet the formal requirements of a contract,

it must, nonetheless, have been communicated with sufficient

particularity to enforce the commitment." Id. (quoting Mooney

v. Mooney, 538 S.E.2d 864, 868 (Gt. Ct. App. 2000)).

Paragraph 114 of Plaintiff's Complaint pleads:

Throughout the course of dealings between the parties,
Glock's conduct, included (but is not limited to) the
following:

- Supplying Lawmen with Glock pistols and
  products to sell to its customers for over
  twenty-five (25) years;

- Encouraging Lawmen to become a "Glock Only"
  dealer;

- Repeatedly representing Glock's commitment
  to the strategic partnership and dedication
  to Lawmen; and

- Repeatedly authorizing, approving, and
  setting pricing for Lawmen's bids for long
  term contracts such as with the State of
  New Jersey, Delaware, and Maryland, with
  the express or at least implicit agreement
  to allow Lawmen to provide Glock products
  as required under those contracts and for
  their full term.

Defendant argues the existence of an undisputedly valid contract warrants dismissal of this claim. "Where parties enter into a contract with bargained for consideration, the terms of which include the promises alleged in support of a promissory estoppel claim, promissory estoppel is not available as a remedy." Am. Casual Dining, 426 F. Supp. 2d at 1371. Thus, "[w]hen neither side disputes the existence of a valid contract, the doctrine of promissory estoppel does not apply, even when it is asserted in the alternative." Id. Defendant argues this statement of the law requires dismissal of Plaintiff's promissory estoppel claim. However, the promises Plaintiff pleads form the basis of this claim are not terms of the Distribution Agreement. Nevertheless, the Court finds Plaintiff's promissory estoppel claim must fail.

First, none of the promises Plaintiff pleads were "communicated with sufficient particularity to enforce the commitment." Joseph M. Still Burn Ctrs., 702 F. Supp. 2d at 1381 (quoting Mooney, 538 S.E.2d at 868). For instance, the Court fails to see how "[e]ncouraging Lawmen to become a 'Glock only' dealer" could constitute a promise that this Court could enforce. Further, "promissory estoppel . . . 'applies to representations of past or present facts and not to promises concerning the future, especially where those promises concern unenforceably vague future acts.'" Bridges v. Reliance Tr. Co.,

31

422 S.E.2d 277, 280 (Ga. Ct. App. 1992) (quoting <u>Reuben v. First</u>
<u>Nat'l Bank</u>, 247 S.E.2d 504, 507 (Ga. Ct. App. 1978)); <u>see also</u>
<u>Discrete Wireless, Inc. v. Coleman Techs., Inc.</u>, 422 F. App'x
777, 782 (11th Cir. 2011) ("Promissory estoppel does not apply
to a promise that is vague, indefinite, or of uncertain
duration."). None of Plaintiff's pleaded "promises" that could
be implied from the Complaint's allegations are definite
representations of past or present facts. Rather, they
precisely concern "unenforceably vague future acts." <u>See</u>
<u>Bridges</u>, 422 S.E.2d at 280. The Court will dismiss Plaintiff's
promissory estoppel claim.

**E. Equitable Estoppel**

"Equitable estoppel is not recognized as an independent
cause of action under Georgia law." <u>Casamayor v. BAC Home Loans</u>
<u>Servicing, LP</u>, No. 12-1522, 2013 WL 12247700, at *11 (N.D. Ga.
Feb. 1, 2013), <u>adopted by</u> 2013 WL 12247837 (N.D. Ga. Feb. 25,
2013). "Absent a proper legal claim, a plaintiff cannot recover
simply by establishing the elements of equitable estoppel." <u>Id.</u>
(quoting <u>Marshall v. King & Morgenstern</u>, 613 S.E.2d 7, 11 (Ga.
Ct. App. 2005)).

In a footnote, Plaintiff argues: "Glock appears to
assert . . . that there is no valid and independent cause of
action for equitable estoppel under Georgia law. This is yet
again another misapplication of the law on Glock's part." (Pl.

32

Br. 25 n.6 (citation omitted)). Plaintiff then cites <u>Kirkland</u>

<u>v. Pioneer Machinery, Inc.</u>, 534 S.E.2d 435 (Ga. Ct. App. 2000)

for the proposition "that there is an equitable estoppel cause

of action under Georgia law." (Pl. Br. 25 n.6.) However,

<u>Kirkland</u> states: "Estoppel . . . is not a cause of action under

Georgia law. . . . Without some proper legal cause of action,

establishing all the elements of equitable estoppel will not

entitle plaintiff to relief." 534 S.E.2d at 437 (quoting <u>Wilson</u>

<u>v. Keheley & Co.</u>, 341 S.E.2d 245, 246 (Ga. Ct. App. 1986)).

Defendant's brief states: "Glock cited to <u>Kirkland</u> as support

for the assertion that Lawmen claims to be a misapplication of

the law, and it directly supports Glock's proposition. Lawmen

has not only incorrectly accused Glock of misapplying the law,

it has blatantly misrepresented the holding of <u>Kirkland</u>." (Def.

Reply Br. 9 (footnote omitted)). The Court agrees. As "Georgia

law treats equitable estoppel as an affirmative defense and not

as a cause of action," <u>nVision Global Tech. Sols., Inc. v.</u>

<u>Cardinal Health 5, LLC</u>, 887 F. Supp. 2d 1240, 1273 (N.D. Ga.

2012), the Court will dismiss Plaintiff's claim for equitable

estoppel.

**F. Tortious Interference with Business Relations and Tortious Interference with Contractual Relations**

A claim for tortious interference with business
relations, under Georgia law, contains four elements:

1)    improper action or wrongful conduct by the
      defendant without privilege;

2)    the defendant acted purposely and with malice
      with the intent to injure;

3)    the defendant induced a breach of contractual
      obligations or caused a party or their parties
      to discontinue or fail to enter into an
      anticipated business relationship with the
      plaintiff; and

4)    the defendant's tortious conduct proximately
      caused damage to the plaintiff.

SHM Int'l Corp. v. Guangdong Chant Grp., Inc., No. 14-1446, 2016

WL 4204553, at *6 (N.D. Ga. June 29, 2016) (quoting Gordon

Document Prods., Inc. v. Serv. Techs., Inc., 708 S.E.2d 48, 53

(Ga. Ct. App. 2011)).  The elements of a tortious interference

with contract claim are similar:

> To recover under a theory of tortious interference with
> contractual relations, a plaintiff must establish that
> the defendant (1) acted improperly and without
> privilege; (2) acted purposely and with malice with the
> intent to injure; (3) interfered with a third party's
> then existing contractual rights and relations; and (4)
> caused the plaintiff financial injury.

Britt/Paulk Ins. Agency v. Vandroff Ins. Agency, 952 F. Supp.

1575, 1583 (N.D. Ga. 1996).

    The Court finds both of these claims must fail because

Defendant is not a "stranger" to the state contracts.  "To

sustain a claim for tortious interference with contractual or

business relations, a plaintiff must establish that the

defendant is a 'stranger' to the business relationship or

34

contract."  Id. at 1583, 1584 ("Georgia law requires that a

plaintiff show that the defendant is a 'stranger' to the

business and contractual relations at issue in order to prevail

on tortious interference with business and contractual relations

claims.").  "In fact, this is an essential element of tortious

interference with business and contractual relations claims."

Id.  "In the context of a tortious interference claim, the term

'stranger' has been interpreted broadly by Georgia courts."  Id.

> Georgia courts have held that a defendant is not a
> "stranger" to a contract or business relationship when:
> (1) the defendant is an essential entity to the purported
> injured relations; (2) the allegedly injured relations
> are inextricably a part of or dependent upon the
> defendant's contractual or business relations; (3) the
> defendant would benefit economically from the alleged
> injured relations; or (4) both the defendant and the
> plaintiff are the parties to a comprehensive interwoven
> set of contracts or relations.

Id.

With regard to all three state contracts, the Complaint

pleads that Defendant specifically authorized Plaintiff to bid

on the contracts and that Defendant dictated the price its

products had to be listed at in the bids.  In opposition to this

Court applying the stranger doctrine, Plaintiff argues:

> Glock's tortious interference . . . extended well beyond
> the specific law enforcement contracts and business
> relationships that Glock claims to which it was
> connected.  Rather, Glock interfered with Lawmen's
> business relationships outside of the Distribution
> Agreement, outside of the State Contracts, and outside
> of any sale of Glock products.  Although Glock may have
> contacted these entities in regards to Lawmen's

> relationship with Glock, the effect of Glock's actions
> and the harm to Lawmen's business reputation and future
> dealings with the various law enforcement entities
> extends far beyond this relationship. Thus, Lawmen has
> sufficiently set forth a claim for tortious interference
> with contract and/or business relations against Glock,
> a stranger to Lawmen's contracts and business relations
> outside of the sale of Glock products.

(Pl. Br. 28). The Court finds Plaintiff's factual averments

insufficient and Plaintiff's argument unconvincing. The

Complaint clearly demonstrates that Defendant "is an essential

entity" to the state contracts and Plaintiff's relationship with

the law enforcement agencies it sells to. It is further clear

to this Court that "the allegedly injured relations are

inextricably a part of or depend upon" Plaintiff's Distribution

Agreement with Defendant. The Court will dismiss this claim.

### G. Breach of Fiduciary Duty

"To state a claim for breach of fiduciary duty, a plaintiff

must plead the following three elements: '(1) the existence of a

fiduciary duty; (2) breach of that duty; and (3) damage

proximately caused by the breach.'" Edelen v. Campbell Soup

Co., No. 08-299, 2008 WL 11324064, at *14 (N.D. Ga. Sept. 25,

2008) (quoting SunTrust Bank v. Merritt, 612 S.E.2d 818, 822

(Ga. Ct. App. 2005)), adopted by 2008 WL 11337304 (N.D. Ga. Dec.

10, 2008). "Under Georgia law, a fiduciary duty is established

where the parties enjoy a confidential relationship." Id.

> A relationship is "deemed confidential whether arising
> from nature, created by law, or resulting from

36

contracts, where one party is so situated as to exercise
a controlling influence over the will, conduct, and
interest of another or where, from a similar
relationship of mutual confidence, the law requires the
utmost good faith, such as the relationship between
partners, principal and agent, etc."

Id. at *13 (quoting O.C.G.A. § 23-2-58).

Plaintiff's Complaint pleads:

130. All of Lawmen's Glock franchise revenues flow from
the sale of Glock products.

131. As the manufacturer of Glock products, Glock is the
sole source of Glock products for Lawmen.  Glock is
therefore in a dominant position as it relates to
Lawmen's viability as a going concern.

132. As the sole source of Glock's products for Lawmen,
Glock has a duty to exercise reasonable care in
providing sufficient amount of Glock products to
Lawmen in order for Lawmen to meet its customer
demands and to remain a viable business operation.

While Georgia law is clear that a fiduciary duty can arise from

a contract, Plaintiff's allegations fail to plead a fiduciary

duty imposed on Defendant through its business relationship with

Plaintiff, even if such relationship constitutes a franchise

relationship.  See Prince Heaton Enters. v. Buffalo's Franchise

Concepts, Inc., 117 F. Supp. 2d 1357, 1365 (N.D. Ga. 2000)

("Under Georgia law, a franchisor does not generally owe a

fiduciary duty to its franchisees.").  The Court will dismiss

this claim.

## H. Fraud and Negligent Misrepresentation

"To assert a claim for fraud under Georgia law, [a plaintiff] 'must show (i) a false representation or omission of a material fact; (ii) scienter; (iii) intention to induce the party claiming fraud to act or refrain from acting; (iv) justifiable reliance; and (v) damages.'" Rosen v. Protective Life Ins. Co., 817 F. Supp. 2d 1357, 1375 (N.D. Ga. 2011) (quoting TechBios, Inc. v. Champagne, 688 S.E.2d 378, 380 (Ga. Ct. App. 2009)).

> In most circumstances, actionable fraud cannot be predicated on a promise contained in a contract because fraud generally cannot be predicated on statements that are in the nature of promises as to future events, and to hold otherwise, any breach of contract would amount to fraud. However, an exception to this rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place.

Id. (quoting TechBios, 688 S.E.2d at 380-81).

Plaintiff's Complaint pleads "Glock made fraudulent misrepresentations to Lawmen in order to induce Lawmen into the Distribution Agreement and for Lawmen to engage in a full-scale effort to market, promote, advertise, and sell Glock's products to law enforcement agencies in the designated territories." (Compl. ¶ 138). It further pleads "Glock's fraudulent misrepresentations included, but are not limited to, representing to Lawmen that Lawmen would be and remain the

exclusive distributor of Glock products to law enforcement agencies in the designated territories." (Compl. ¶ 139).

Federal Rule of Civil Procedure 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The sole allegation as to a fraudulent representation asserted with any degree of specificity is that Defendant represented that Plaintiff would remain an exclusive distributor of its products to law enforcement agencies within Plaintiff's territories. Plaintiff alleges this was intended to "induce Lawmen into the Distribution Agreement and for Lawmen to engage in a full-scale effort to market, promote, advertise, and sell Glock's products to law enforcement agencies in the designated territories." However, even this statement fails to sufficiently "state with particularity the circumstances constituting fraud or mistake." "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). Plaintiff has not satisfied this burden.

For the same reason, the Court will also dismiss Plaintiff's negligent misrepresentation claim. See Travelers Indem. Co. v. Cephalon, Inc., 620 F. App'x 82, 85 (3d Cir. 2015) (providing that where a "theory sounds in fraud," including a

negligent misrepresentation claim, a plaintiff's "pleadings must satisfy the 'stringent' Rule 9(b) requirements for particularity.").

### I. Unjust Enrichment

"Unjust enrichment is an equitable concept that applies when there is no actual legal contract, but yet there has been a benefit conferred for which there deserves to be some compensation given to the party delivering the benefit." Jenkins, 822 F. Supp. 2d at 1377 (citing Renee Unlimited, Inc. v. City of Atlanta, 687 S.E.2d 233, 238 (Ga. Ct. App. 2009)). "In other words, '[a]n unjust enrichment theory does not lie where there is an express contract.'" White v. Wachovia Bank, N.A., 563 F. Supp. 2d 1358, 1371 (N.D. Ga. 2008) (alteration in original) (quoting Pryor v. CCEC, Inc., 571 S.E.2d 454, 456 (Ga. Ct. App. 2002)).

Plaintiff's Complaint pleads: "Glock has been unjustly enriched by Lawmen's purchase of inventory under the Distribution Agreement." (Compl. ¶ 145). It further pleads: "Glock has been unjustly enriched by substantial investments and marketing efforts made to grow the Lawmen/Glock partnership." (Compl. ¶ 147). Here, it is undisputed that a valid legal contract existed between Plaintiff and Defendant, which is fatal to Plaintiff's claim. However, Plaintiff argues Defendant has been unjustly enriched through Plaintiff's state contracts,

which are separate from the Distribution Agreement and to which Defendant is not a party. However, Defendant is correct that Plaintiff's only allegations as to the basis for its unjust enrichment claim relate to benefits Defendant incurred under the Distribution Agreement.

In any event, an unjust enrichment claim based on the state contracts still fails, as "[a] claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails." Wachovia Ins. Servs. v. Fallon, 682 S.E.2d 657, 665 (Ga. Ct. App. 2009) (quoting Tidikis v. Network for Med. Commc'ns & Research, LLC, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005)). As Plaintiff is attempting to "assert[] unjust enrichment as a separate tort and not an alternative theory of recovery for a failed contract, this claim fails as a matter of law." See id. The Court will dismiss Plaintiff's claim for unjust enrichment.

**J. Violation of the New Jersey Uniform Commercial Code**

Plaintiff's Complaint alleges violations of N.J.S.A. 12A:1-203 and N.J.S.A. 12A:2-306. This Court finding Georgia state law governs this action, and Plaintiff having provided no sound reason otherwise, the Court finds any claims under these provisions must fail.[6] The Court has also assumed throughout the

---

[6] The Distribution Agreement's choice of law provision specifically states that the Georgia UCC provisions govern.

41

course of this Opinion that common law applies to the
Distribution Agreement.  If Plaintiff contends the UCC applies,
the Court will allow Plaintiff to replead any corollary UCC
claims under Georgia law, subject to the Court revisiting its
decision on Plaintiff's common law claims.

## K. Violation of the New Jersey Consumer Fraud Act

The Court will dismiss Plaintiff's NJCFA claim.  As a
preliminary matter, the Court does not find the Distribution
Agreement's choice of law provision waived Plaintiff's right to
assert a cause of action under the NJCFA.  "[A] contractual
choice of law will not be upheld where application of the law
would be contrary to the public policy of New Jersey.  The NJCFA
is a clear and fully articulated statement of fundamental public
policy by the legislature of New Jersey." Prescription Counter,
2007 WL 3511301, at *13.  "The importance of the consumer
protection policy manifested by the NJCFA has led the courts to
apply New Jersey law, even though other choice of law rules
pointed elsewhere." Id.

Applying the NJCFA, the Court finds Plaintiff's claim must
be dismissed.  Plaintiff's Complaint pleads the NJCFA applies
because Plaintiff "purchased merchandise (i.e. Glock products)
from Glock."  The NJCFA is intended to protect consumers who
purchase "goods or services generally sold to the public at
large." Id. at *14 (quoting Cetel v. Kirwan Fin. Grp., Inc.,

460 F.3d 494, 514 (3d Cir. 2006)).  "Products and services that are purchased for consumption or use in the course of business are covered by the NJCFA."  Id. at *15.  "On the other hand, goods or services that are never consumed or used in the course of business, such as products purchased at wholesale for resale, franchises, and designs are not covered by the NJCFA."  Id.; accord Stockroom, Inc. v. Dydacomp Dev. Corp., 941 F. Supp. 2d 537, 544 (D.N.J. 2013) ("Many cases where a business-to-business transaction is deemed to be outside the scope of NJCFA involve wholesalers and distributors.  In those circumstances, the distributor cannot sue the wholesaler under the NJCFA because the distributor is not a 'consumer' as that word is commonly understood.").

To the extent Plaintiff is seeking to apply the NJCFA to this action based on the distributorship or franchise being the good sold, the Third Circuit has held that "even where franchises or distributorships are available to the public at large in the same sense as are trucks, boats or computer peripherals, they are not covered by the Consumer Fraud Act because they are businesses, not consumer goods or services. They never are purchased for consumption." J & R Ice Cream Corp. v. Cal. Smoothie Licensing Corp., 31 F.3d 1259, 1274 (3d Cir. 1994).  Although the New Jersey Superior Court, Appellate Division has criticized the holding in J & R, see Kavky v.

Herbalife Int'l of Am., 820 A.2d 677 (N.J. Super. Ct. App. Div. 2003), "the majority of courts in this district have followed the Third Circuit's interpretation of the NJCFA." Kumon N. Am., Inc. v. Timban, No. 13-4809, 2014 WL 2812122, at *10 (D.N.J. June 23, 2014); accord Carrow v. Fedex Ground Package Sys., No. 16-3026, 2017 WL 1217119, at *5 (D.N.J. Mar. 30, 2017) (stating that, while "[s]ome recent decisions by the New Jersey Appellate Division have rejected the restrictive interpretation in J & R," the Third Circuit decision "is binding on this Court"). This claim will be dismissed.

## VI.

The Court will grant Defendant's Motion to Dismiss as to Count I (NJFPA), Count II (NJFPA), Count V (promissory and equitable estoppel), Count VI and VII (tortious interference claims), Count VIII (breach of fiduciary duty), Count IX (fraud and negligent misrepresentation), Count X (unjust enrichment), Count XI (violation of the New Jersey Uniform Commercial Code), and Count XII (violation of the NJCFA). The Court will deny Defendant's Motion to Dismiss as to Count III (breach of contract) and Count IV (breach of the implied covenant of good faith and fair dealing). The Court will grant Plaintiff thirty days to replead its NJFPA claim to sufficiently assert facts to satisfy the New Jersey place of business requirement and to

plead any of its UCC claims under Georgia law.  An appropriate

Order will be entered.[7]


Date: <u>June 29, 2018</u>                    <u>s/ Noel L. Hillman</u>
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

[7]    The Court will not award attorneys' fees to either party at
this time.